# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| FRANKLIN RICE | CIVIL ACTION NO. 05-1112-M |
| VS. | JUDGE JAMES |
| WARDEN CLOVIS TILLERY ET AL. | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff Franklin Rice on June 20, 2005. When he filed his complaint, plaintiff was residing at 312 E. Hwy. 90, New Iberia, Louisiana. He complained of an incident occurring in June, 2004 when he was an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC) incarcerated at the Richwood Corrections Center (RCC). He named RCC Warden Clovis Tillery and LDOC Secretary Richard Stalder as defendants.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

On June 20, 2005, plaintiff submitted to the court a copy of a Third Step Administrative Remedy Procedure grievance which had been previously submitted to the RCC administration on June 21, 2004, and designated RCC-00-659. The document was accepted by the Clerk of Court and interpreted as a civil rights complaint. [Doc. 1]

Therein plaintiff complained that on June 18, 2004, he was in the "Rec -Yard" at RCC. While in the process of removing his shirt, plaintiff observed a fellow inmate running in his

1

direction. Plaintiff stepped out of his path and "accidentally" cut his left hand on the razor wire which surrounds the compound. The razor wire sliced plaintiff's middle finger causing profuse bleeding and damage to blood vessels, nerves, and ligaments. Plaintiff was seen by the RCC nurse who cleaned the wound and applied a strip adhesive to close it.

According to the plaintiff, "[t]he razor wire is hardly six foot [sic] off the ground around the whole compound..." He says that a fellow inmate was also cut by the wire while jogging around the compound.

Plaintiff prayed that his conviction for "aggravated disobedience" be expunged and that the razor wire be moved to the top of the fence. He asked for a larger Rec-Yard and for compensatory and punitive damages totaling $150,000.

On August 18, 2005 plaintiff filed an Amended Complaint alleging that Warden Tillery and Secretary Stalder violated his rights under the Eighth and Fourteenth Amendments "by not providing a safe place to live, and not ... providing protection from personal injury." He claimed further that Stalder failed "...to supervise" and confirmed that the action was brought pursuant to 42 U.S.C. §1983. [Doc. 6]

On October 12, 2005, plaintiff submitted a copy of RCC's response to the grievance designated as RCC-00-659. [Doc. 7] The response was dated June 23, 2004 and was signed by RCC Assistant Warden William Savage. According to the response, plaintiff was charged with disobedience following the incident complained of. Plaintiff was charged with violating posted policy which apparently mandates that inmates "stay off the perimeter fence." He was subsequently convicted of the offense. Accordingly, his grievance was denied.

On October 19, 2005, defendant, Warden Tillery, filed an Answer. [Doc. 9] On

November 11, 2005, defendants Tillery and Stalder filed a Motion to Dismiss, [Doc. 11] urging dismissal under F.R.C.P. Rule 12(b) because the plaintiff's complaints alleged "...insufficient facts to make out a cause of action protected by 42 U.S.C. §1983..." On November 30, 2005, plaintiff filed an Opposition to the Motion to Dismiss, [Doc. 14] arguing that prisoners are "...entitled to a healthful place in which to live and to protection from personal injury, disease, property damage and personal abuse or harassment..." Plaintiff further claimed that the defendants were aware of the substantial risk of harm posed by the razor wire fence yet failed to remedy the hazard.

## **LAW AND ANALYSIS**

Plaintiff complains of a particular "condition of confinement" he encountered during his incarceration at the RCC in June, 2004. Harsh or dangerous "conditions of confinement" may constitute cruel and unusual punishment and thus be violative of a prisoner's rights under the Eighth Amendment unless such conditions are "part of the penalty that criminal offenders pay for their offenses against society." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1985) quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Gillespie v. Crawford*, 833 F.2d 47, 50 (5th Cir.1987).

There is no "bright line" test which allows courts to determine whether a particular condition of confinement is cruel and unusual because the Eighth Amendment draws "... its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes*, 452 U.S. at 346. Eighth Amendment standards are derived from objective factors which reflect the "mores of society and not merely the subjective views of judges." *Wilson v. Lynaugh*, 878 F.2d 846, 848 (5th Cir.1989); *Jackson v. Cain*, 864 F.2d 1235, 1245 (5th Cir.1989).

Conditions of confinement claims must also be analyzed under a "totality of the conditions test." *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir.1990); *Jackson*, 864 F.2d at 1245.

In determining whether a particular condition of confinement is cruel and unusual under the Eighth Amendment, the courts should determine whether the condition manifests a "wanton and unnecessary infliction of pain," or, whether the condition is "grossly disproportionate to the severity of the crime warranting imprisonment," and, finally, whether the condition results in the deprivation of the "the minimal civilized measure of life's necessities." *Wilson v. Lynaugh*, 878 F.2d at 848 quoting *Rhodes v. Chapman*, 452 U.S. at 346-47.

In order for the condition in question to constitute cruel and unusual punishment, conduct or conditions that do not purport to be punishment must involve more than ordinary lack of due care for the prisoners' interest or safety. *Whitley v. Albers*, 474 U.S. 312, 319 (1986); *Gillespie v. Crawford*, 833 F.2d 47, 50 (5th Cir.1987). After all, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock," *Whitley*, 475 U.S. at 319; and, "if the pain inflicted is not formally meted out as punishment by the statute or sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify" as cruel and unusual punishment in violation of the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). When challenging a condition of confinement, a prisoner must show that the defendants have exhibited "deliberate indifference." *Id.* at 303. Mere negligence does not satisfy this

4

standard. *Id.* In order to prevail, the complaining prisoner must show that he was forced to suffer an extreme deprivation of "minimal civilized measure of life's necessities." *Id.* at 304.

Conditions of confinement claims must satisfy tests which look to both objective and subjective components. *Davis v. Scott*, 157 F.3 1003, 1006 (5th Cir.1998), citing *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). With regard to the issue of deliberate indifference, the Supreme Court has stated that "[A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994); see *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir.1995) ( to prevail, the plaintiff prisoner must prove both that he is incarcerated under conditions "posing a substantial risk of serious harm" and that the prison official's state of mind is one of "deliberate indifference" to the inmate's health or safety. *Horton*, 70 F.3d at 401, citing *Farmer*, 114 S.Ct. at 1977.)

Living behind fences or bars is simply part of "the penalty that criminal offenders pay for their offenses against society." *Cf. Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1985) quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Gillespie v. Crawford*, 833 F.2d 47, 50 (5th Cir.1987). The deployment of razor wire atop a security perimeter as additional insurance against escape is not "grossly disproportionate

to the severity of the crime warranting imprisonment;" nor does such a condition result in the deprivation of the "the minimal civilized measure of life's necessities." *Wilson v. Lynaugh*, 878 F.2d at 848 quoting *Rhodes v. Chapman*, 452 U.S. at 346-47.

Nevertheless, even assuming, for the sake of argument, that there exist no valid penological objectives for the use of razor wire in prisons (a dubious and preposterous contention at best), plaintiff simply has not shown deliberate indifference on the part of the defendants. To the contrary, according to the information supplied by plaintiff, he and his fellow inmates are advised *via* "posted policy" <u>to stay away from the perimeter fence</u> topped by the razor wire. One would assume that common sense would also dictate such a policy. Prison officials are clearly aware of the dangers of razor wire and common sense suggests that it is this very danger which deters and prohibits escape. However, prison officials do not expose inmates to this hazard; inmates expose <u>themselves</u> to the hazard; nor are prison officials "deliberately indifferent" to the safety hazard posed by razor wire. Nothing of record suggests that the defendants actively desired plaintiff's injury. On the contrary, the defendants apparently mandated by their posted policy that all inmates to stay away from the perimeter. The defendants could assume that plaintiff and others would abide by that mandate.

In order to prevail, the plaintiff must allege and then prove that he is incarcerated under conditions "posing a substantial risk of serious harm" <u>and</u> that the defendants' state of mind is one of "deliberate indifference" to his health or safety. *Horton*, 70 F.3d at 401, citing *Farmer*, 114 S.Ct. at 1977. Plaintiff has alleged neither, nor do the facts alleged suggest that he might likely prevail were he to allege such a claim.

Accordingly,

6

**IT IS RECOMMENDED** that the defendants' Motion to Dismiss be **GRANTED** and that the plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 16th day of February, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE